UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN TRACY DAVARIS,<br><br>Defendant. | Case No. 12-cr-00850-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A)**<br><br>Docket No. 123 |

Defendant John Davaris has moved the Court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). Docket No. 123. He cites several reasons that he contends are extraordinary and compelling when taken together, making him eligible for compassionate release. The Court does not find that these reasons are extraordinary and compelling, and therefore denies Mr. Davaris's request for early release.

The first reason Mr. Davaris cites is that he has several serious medical conditions that make him particularly vulnerable to COVID-19, which has spread at FCI Lompoc. Second, when Mr. Davaris experienced a serious illness in December 2021, the Bureau of Prisons did not provide him with adequate care until he was in a medical crisis. Third, Mr. Davaris has had an exemplary record in prison, and had only one conviction prior to the case for which he is currently incarcerated. Fourth, the conditions of his confinement during the COVID-19 pandemic have been more severe than was anticipated at his sentencing. Mr. Davaris also notes that he is due to be released in less than one year, on May 14, 2024. None of these factors set Mr. Davaris apart from the many individuals who have served a substantial portion of their sentences during the COVID-19 pandemic. Moreover, the risk of COVID-19 has substantially subsided, and Mr.

1  Davaris does not cite any recent data to indicate that he is presently at risk for re-infection with
2  COVID-19.
3        Mr. Davaris's motion for relief is **DENIED**.  The Court finds that the totality of
4  circumstances before it is not extraordinary and compelling such that a reduction in Mr. Davaris's
5  sentence is warranted.

## I.    BACKGROUND

      Mr. Davaris was discovered cultivating marijuana, with over 300 marijuana plants growing at his home.  A substantial number of guns was also found at his residence.  There were fifteen handguns and rifles of various calibers in a gun safe (including one firearm threaded for a silencer and one rifle with an attached bayonet).  In various rooms on the property, officers also recovered: a 9-shot revolver; two .38-caliber revolvers; a loaded 12-gauge shotgun; two .22-caliber pistols, one with a silencer; a .40-caliber Glock pistol; a 9mm Sig Sauer pistol; a Luger pistol; more than a dozen high capacity magazines; body armor; a military-style helmet; gas masks; a large amount of ammunition; two more assembled silencers and parts to make two to three additional silencers.  Soon after his arraignment, he absconded and became a fugitive for two years after posting bail.  He was apparently homeless during that time and camped on beaches.  In 2015, Mr. Davaris self-surrendered and pled guilty to one felony count of possession of marijuana with intent to distribute, one count of § 924(c) for possession of a firearm in relation to drug trafficking, one count of unlawful possession of a silencer, and one count of bail jumping.  The marijuana charge carried a five-year mandatory minimum sentence.  The Court sentenced Mr. Davaris to five years for the marijuana charge and the silencer charge (to be served concurrently), five years for the gun possession charge to be served consecutively with the prior sentence, and one day for the bail jumping charge, to be served consecutively with both.

      Mr. Davaris has been in custody since his voluntary surrender on December 18, 2015, and he is due to be released on May 14, 2024.  In his nearly seven and a half years at FCI Lompoc, he has never been disciplined. Declaration of Todd Borden ("Borden Decl."), Docket 124, Ex. H. The BOP's evaluation rates Davaris's risk of recidivism as "low." *See* Borden Decl. Ex. P at 1.

## II. LEGAL STANDARD

Section 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), provides that a court may modify a previously imposed sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[1] Under this provision, the Court may reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In determining whether "extraordinary and compelling reasons" exist for reducing the defendant's sentence, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 § 3582(c)(1)(A).

The Ninth Circuit has held that the current version of the Sentencing Guidelines policy statement at U.S.S.G. § 1B1.13 is not binding on a court in assessing whether there are extraordinary and compelling circumstances. *See United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). Accordingly, this Court has jurisdiction to consider any "extraordinary and compelling" reason for a sentence reduction, without regard to at U.S.S.G. § 1B1.13.[2]

## III. DISCUSSION

A. Extraordinary and Compelling Reasons

    1. Conditions at FCI Lompoc

Pursuant to a class action lawsuit, the Central District of California appointed Dr. Homer Venters, an independent physician and epidemiologist, to conduct site visits at FCC Lompoc.[3] Dr. Venters conducted his initial inspection in September 2020 and concluded that BOP at Lompoc

---

[1] The parties agree that Mr. Davaris has administratively exhausted his motion for a sentence reduction.

[2] The Sentencing Commission recently promulgated revisions to the "extraordinary and compelling reasons" guidelines, which are not yet in effect but are consistent with this opinion. Sentencing Guidelines for U.S. Courts, 88 Fed. Reg. 28,254 (May 3, 2023).

[3] FCC Lompoc is the larger federal correctional complex that encompasses FCI Lompoc, where Mr. Davaris is housed.

3

provided a "grossly inadequate system of health care" in relation to the COVID-19 pandemic. Borden Decl. Ex. D at 28. Dr. Venters returned in April 2021 and was "dismayed that despite multiple assurances . . . [there remained the] same complete lack of screening of workers." Borden Decl. Ex. E at 20.

When COVID-19 began to spread through the prison in 2020, Mr. Davaris lived in a housing unit where approximately 200 inmates shared a single large room, sleeping in bunkbeds. Davaris Decl. ¶ 3. He notes that it was impossible to social distance under these conditions. *Id.* Indeed, the Department of Justice's Office of the Inspector General found that, by May 11, 2020, about 77 percent (891 of 1,162) of all FCI Lompoc inmates had tested positive for COVID-19. OIG Report; Borden Decl. Ex. B at 12. The OIG Report noted that "[i]nfrastructure issues are particularly concerning at the FCI, where inmates are housed open, dormitory style, with bunk beds 3 feet apart from each other." *Id.* at 12-13.

The conditions at FCI Lompoc were certainly trying and are a factor in determining whether there are extraordinary and compelling reasons for Mr. Davaris's release. However, having served several years of his sentence during the COVID-19 pandemic is not itself sufficient to establish that there are extraordinary and compelling reasons for his release, particularly in the absence of current serious threat to health.

2. Mr. Davaris's Medical Conditions

Mr. Davaris has several serious medical conditions, including obesity, hypertension, chronic kidney disease, and hypothyroidism. Each of these conditions put him at greater risk if he contracts COVID-19. Mr. Davaris contracted COVID-19 in May 2020. *See* Borden Decl. Ex. C at 3. There is no evidence that he became seriously ill even with his health risks. He then received his COVID-19 vaccines in December 2020 and January 2021, and received his booster vaccine in January 2022 despite requesting it sooner. In December 2021, Mr. Davaris's suffered a pleural effusion, or collapsed lung, while incarcerated at FCI Lompoc.

On December 21, 2021, Mr. Davaris first complained of difficulty breathing and reported

4

that he had suffered from severe flu-like symptoms the week before.[4] Two days later, on December 23, 2021, an x-ray revealed that Mr. Davaris had a partially collapsed lung. He also complained of difficulty breathing or laying down, but was sent back to his cell with an albuterol inhaler. Borden Decl. Ex. K at 4–6; Davaris Decl. ¶ 12. The government notes that the x-ray was faxed to the on-call physician, who agreed with this course of action. *See* Declaration of Andrew M. Scoble ¶ 9(c), Docket 132-1, & Ex. G. On December 26, 2021, Mr. Davaris's condition became acute, and he was rushed to the emergency room. He eventually underwent three surgeries and remained in the Intensive Care Unit for two weeks.

U.S.C. § 3582(c)(1)(A) provides for a narrow exception to the general rule that Courts may not modify sentences after they are imposed. Mr. Davaris has the high burden to establish his eligibility for compassionate release. *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022). Accordingly, he must prove that compelling and extraordinary circumstances merit his release. Mr. Davaris has not demonstrated that this incident was caused by COVID-19. For example, he has not provided any evidence that COVID-19 infection causes pleural effusions; nor does he present any evidence beyond mere speculation that he had contracted COVID-19 around the time of his hospitalization. Nor has Mr. Davaris demonstrated he is currently suffering from a medical condition that cannot be addressed by the BOP.

That Mr. Davaris has not established a compelling and extraordinary basis for release on the grounds of medical condition is confirmed by the impending amendments to the guidelines of the Sentencing Commission which, although not in effect, provide useful guidance. Among the amendments promulgated by the Sentencing Commission and submitted to Congress is an additional qualifying category for relief, called the "Medical Circumstances of the Defendant." 88 Fed. Reg. 28,254. This factor applies when a defendant is ''suffering from a medical condition that requires long-term or specialized medical care that is not being provided'' and who, without that care, ''is at risk of serious deterioration in health or death." Mr. Davaris does not contend that

---

[4] Mr. Davaris contends that there was significant pressure from other inmates not to report COVID-19 symptoms to avoid triggering a lockdown, and personal fear of reporting because it could result in being sent to the Special Housing Unit. Davaris Decl. ¶¶ 7, 11.

5

he has an ongoing medical condition requiring specialized care.  Instead, Mr. Davaris claims that he received inadequate care for an acute condition in the past, but that condition no longer requires treatment.  Accordingly, this factor does not weigh in favor of granting Mr. Davaris's motion.

### 3. Mr. Davaris's Conduct in Prison

Mr. Davaris worked as an orderly and at FCI Lompoc's kitchen prior to the COVID-19 pandemic.  Davaris Decl. ¶ 6.  He has participated in programming while in prison, taking classes on the history of Native Americans, personal finance, history of Christianity, astronomy, and alternatives to violence, as well as a GED class even though he already holds a high school diploma.  Borden Decl. Ex. G; Davaris Decl. ¶ 16.  Mr. Davaris's opportunities for programming became more limited due to the COVID-19 pandemic, which had a significant impact on his experience in prison.  Mr. Davaris has also maintained a perfect disciplinary record since he was admitted to the BOP in 2016.  Borden Decl. Ex. H.

While Mr. Davaris's efforts are commendable, they are not extraordinary.  Good conduct is expected of all prisoners, and Mr. Davaris has not demonstrated that FCI Lompoc posed an exceptional challenge to his maintaining good behavior.

## B. Section 3553(a) Factors

The § 3553(a) factors do not weigh in favor of Mr. Davaris's release.  Though his criminal history was minimal, Mr. Davaris had a veritable arsenal of guns when he was arrested for cultivating over 300 marijuana plants.  In addition, he fled while on bail and was in fugitive status for more than two years from November 6, 2013 to December 18, 2015.  Moreover, Mr. Davaris cites his addiction to methamphetamine to explain his conduct, and claims that he will enter a drug treatment program when released, but has failed to take advantage of drug treatment resources available to him during his incarceration.

In Mr. Davaris's favor, the Guidelines range for his drug charge was 30–37 months. *See* PSR ¶ 87.  Accounting for the mandatory 60-month sentence for the section 924(c) charge, Mr. Davaris's mandatory minimum sentence range was thus 90–97 months.  He has served nearly 89 months of his sentence to date.  He has served a significant portion of this sentence under trying and severe conditions related to the COVID-19 pandemic, conditions not anticipated at the time of

sentencing. *Cf. United States v. Indarte*, No. CR17-5554 BHS, 2020 WL 6060299 at *4, 2020 U.S. Dist. LEXIS 189970 at *12 (W.D. Wash. Oct. 14, 2020) (noting that the § 3553(a) "factor relating to the 'need for just punishment' has dramatically shifted since sentencing[;] [t]he lock-down measures prisons across the country . . . have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing"). Mr. Davaris has also indicated that he intends to re-apply for his commercial driver's license and return to truck-driving as a source of income. However, having served most of his sentence and having a positive prison record are not sufficient to establish extraordinary circumstances, even when considering the impact of COVID-19 on Mr. Davaris's term of imprisonment, in the absence of any other significant mitigating factor.

## IV.   CONCLUSION

Accordingly, the Court **DENIES** Mr. Davaris's motion for compassionate release. This order disposes of Docket No. 123.

**IT IS SO ORDERED**.

Dated: May 19, 2023

_____
EDWARD M. CHEN
United States District Judge